IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


TRACY LYNN MOORE A.,[1]                                No. 6:20-cv-2132-MO

                    Plaintiff,                          OPINION & ORDER

        v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

                    Defendant.


MOSMAN, District Judge:

        This matter comes before me on Plaintiff Tracy Lynn Moore A.'s Complaint [ECF 1]

against Defendant Commissioner of the Social Security Administration. For the reasons given

below, I AFFIRM the Commissioner's decision and DISMISS this case.


---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of
the nongovernmental party in this case.

1 – OPINION & ORDER

## PROCEDURAL BACKGROUND

On March 16, 2018, Plaintiff applied for Supplemental Security Income ("SSI") under

Title XVI of the Social Security Act, alleging disability beginning March 13, 2015. Tr. 46. The

Social Security Administration ("SSA") denied her claim initially and upon reconsideration. Tr.

121-122, 126-28. Plaintiff appeared and testified at a hearing held on March 5, 2020, before

Administrative Law Judge (ALJ) Katherine Weatherly. Tr. 66-81. On March 26, 2020, the ALJ

issued a decision finding that Plaintiff had not been under a disability at any time from the

alleged onset date through the date of the decision. Tr. 43-63. Plaintiff filed an appeal, and the

Appeals Council denied review. Tr. 1-7.

## THE ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity

since March 16, 2018, the application date. Tr. 48. At step two, the ALJ determined that Plaintiff

had the following severe impairments: posttraumatic stress disorder (PTSD); major depressive

disorder; anxiety disorder; mild intellectual disabilities; and amphetamine use disorder in

remission. Tr. 48. At step three, the ALJ found no impairment that met or equaled the severity of

any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 49. The ALJ assessed

Plaintiff's residual functional capacity ("RFC") to:

> perform a full range of work at all exertional levels but with the following non-
> exertional limitations. She can understand, remember, and carry out simple,
> routine, repetitive tasks and make simple work-related decisions. She is limited to
> few, if any, workplace changes and no assembly line pace work. She can have no
> public contact but can have occasional contact with coworkers and supervisors.

Tr. 49.

At step four, the ALJ determined that Plaintiff was unable to perform any past relevant

work. Tr. 56. At step five, the ALJ determined that there are jobs that exist in significant

numbers in the national economy that the claimant can perform such as hand packager, marker, and garment sorter. Tr. 58. The ALJ therefore found Plaintiff not disabled. Tr. 58.

## LEGAL STANDARD

Courts must uphold the ALJ's decision if it "was supported by substantial evidence and based on proper legal standards." *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Substantial evidence is "more than a mere scintilla," and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1150 (2019) (internal quotation marks omitted). When "evidence is susceptible of more than one rational interpretation ... the ALJ's conclusion ... must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Errors in the ALJ's decision do not warrant reversal if they are harmless. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006).

## DISCUSSION

Plaintiff raises three issues with the ALJ's decision.[2] Plaintiff argues the ALJ erred by (1) erroneously discounting her symptom testimony, (2) erroneously discounting lay witness testimony, and (3) improperly rejecting a relevant medical opinion. I address these issues in turn.

---

[2] On reply, Plaintiff raises a fourth: that the Court should remand this case because it was decided during the tenure of a former SSA Commissioner whose appointment violated the Constitution. Pl. Reply, ECF No. 13 at 1-5. Plaintiff waived this argument by waiting to raise it until her reply brief. *Zango, Inc. v. Kaspersky Lab, Inc.*, 568 F.3d 1169, 1177 n.8 (9th Cir. 2009) ("[A]rguments not raised by a party in an opening brief are waived."). And even if Plaintiff had not waived the issue, the Ninth Circuit has since taken up the question and held that, to succeed, "a party challenging an agency's past actions must instead show how the unconstitutional removal provision *actually harmed* [her]." *Kaufmann v. Kijakazi*, 32 F.4th 843, 849 (9th Cir. 2022) (emphasis in original). Plaintiff does not make such a showing, so the Court would not disturb the ALJ's finding on this basis, even if Plaintiff had preserved the argument. *See id.* (denying claimant's request to overturn the SSA's decision because "[n]othing in the record suggests any link whatsoever between the removal provision and Claimant's case").

I.    **Subjective Symptom Testimony**

The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). The ALJ engages in a two-step analysis for subjective symptom evaluation. *Molina v. Astrue*, 674 F.3d 114, 1112 (9th Cir. 2012) (superseded on other grounds). First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (internal quotations omitted). Second, "if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms." *Id.*

When evaluating subjective symptom testimony, "[g]eneral findings are insufficient." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). "An ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). Instead, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001); *see also Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony.").

Plaintiff alleged disability as a result of depression, PTSD, anxiety, bipolar disorder, schizophrenia, head trauma, severe back problems, migraine headaches, insomnia, and borderline diabetes. Tr. 204. In her application, Plaintiff related a March 13, 2015 incident when a piece of freeway overpass fell onto her head, hospitalizing her and causing her to lose complete memory, including the memory of her children. Tr. 210. At the hearing, Plaintiff testified about

her past work at a gas station, at a fast food restaurant, and at Goodwill as a janitor prior to her head trauma. Tr. 71-72. She testified that she has since had difficulty concentrating and remembering, and that she is easily confused. Tr. 72. She also has migraines, dizziness, anxiety, and confusion. Tr. 74. When she has a migraine she must isolate in a dark room without noise. Tr. 74. She cries "a lot" due to her depression, "feeling. lost, alone, shaking." Tr. 74. She struggles to go into public without panicking. Tr. 75. Her mind races and she is unable to focus on one thing. Tr. 75. She used methamphetamines in the past and has two years of sobriety as of the hearing date. Tr. 75. She relies on AA and NA meetings and her sponsor to maintain her sobriety. Tr. 76.

The ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms and did not identify evidence of malingering. Tr. 53. However, the ALJ concluded that Plaintiff's statements concerning the intensity, persistence and limiting effects of her conjunctivitis symptoms were not entirely consistent with the medical evidence and other evidence in the record. Tr. 53. Specifically, the ALJ found Plaintiff's symptom allegations were inconsistent with objective medical evidence, her record of conservative treatment and her improvement with treatment, and that Plaintiff's daily activities conflicted with her symptom allegations. Tr. 58.

*A. Objective Medical Evidence*

The ALJ is instructed to evaluate objective evidence in considering a claimant's symptom allegations. 20 C.F.R. § 416.929(c)(2) ("Objective medical evidence ... is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms[.]"). Indeed, "[w]hen objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony."

*Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) (emphasis in original); s*ee also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (affirming the ALJ's credibility finding when the plaintiff's testimony of weight fluctuation was inconsistent with the medical record). The absence of corroborating objective medical evidence is not enough, on its own, however, to reject a claimant's symptom testimony. 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2); SSR 16-3p, 2017 WL 5180304, at *5; *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

The ALJ reasonably relied on conflicting medical records to discount Plaintiff's subjective symptom testimony about the extent to which her depression and anxiety limit her ability to interact with others and concentrate. Conflict with objective medical evidence is a sufficient basis for discounting a claimant's testimony. *Smartt*, 53 F.4th at 498; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). At the hearing, Plaintiff testified that her significant depression and anxiety meant she "can't concentrate on one thing," had a "really bad time remembering things," and she was scared being around people and "can't go in a grocery store without panicking." Tr. 72, 74-75. The ALJ compared these allegations to Plaintiff's medical history, however, which conflicted with her allegations. Tr. 53. The ALJ cited several of Plaintiff's appointments from during the relevant period, where she was generally in a good mood, working on making new friends, and happy with her progress. Tr. 54 (citing Tr. 395-404, 413, 694). The ALJ also cited medical records from May, 2018, showing Plaintiff "cheerful and bubbly despite her symptoms," calm, focused, and "able to understand the steps she needed to take to reach her goals. Tr. 53 (citing, Tr. 494-96, 552-54). The ALJ noted that Plaintiff's "good rapport with providers," "pleasant and cooperative" demeanor, and comfortable affect during appointments further undermine her allegations about difficulty interacting with others. These objective indicators of positive mood and ability to focus all painted a different picture than the one

Plaintiff described at the hearing, and the ALJ's decision to discount her testimony about these symptoms was clear, convincing, and supported by substantial evidence in the record.

### B. Conservative Treatment

The ALJ also found Plaintiff's symptom testimony was inconsistent with a history of conservative treatment. Tr. 54. "[I]n order to get benefits, an individual must follow treatment prescribed by his or her physician if the treatment can restore the ability to work, unless the individual has an acceptable reason for failing to follow the prescribed treatment." *Orn v. Astrue*, 495 F.3d 625, 636-37 (9th Cir. 2007). Likewise, an ALJ may reject a claimant's testimony when the severity of symptoms alleged is inconsistent with the level or frequency of treatment. *See Molina*, 674 F.3d at 1113 (quoting Social Security Ruling ("SSR") 96–7p, 1996 WL 374186, at *7 (July 2, 1996); *Burch v. Barnhart*, 400 F.3d 1111, 1114 (9th Cir. 2005).

The ALJ reasonably considered Plaintiff's conservative treatment when discounting her testimony about the extent of her mental health symptoms. The ALJ noted that Plaintiff treated her depression and anxiety with counseling sessions, but never underwent emergency care for a psychiatric crisis. Tr. 53-54. Nor was Plaintiff ever hospitalized for her conditions. Tr. 55, 564. The ALJ also pointed out, "there were periods which [Plaintiff] was not taking any mental health medication or attending therapy." Tr. 55. Plaintiff started mental health therapy in January 2018 but was discharged in October 2018 due to: "No-show for 30 days or more." Tr. 53, 391 (noting last contact with Plaintiff was in August 2018). Thereafter, Plaintiff did not reinitiate therapy. Her next mental health treatment visit occurred one year later for a psychiatric medication appointment. Tr. 54, 771. At that visit, Plaintiff was referred for a neuropsychological evaluation but she did not to follow through with the referral. Tr. 54, 769. Further, after Plaintiff stopped therapy, she took medication inconsistently. Tr. 53, 508, 761. Ultimately, the ALJ reasonably

found Plaintiff's conservative treatment, and treatment gaps undermined the severity of mental health complaints she alleged at the hearing.

In response, Plaintiff cites *Garrison v. Colvin* for the proposition that "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment .... [W]e do not punish the mentally ill for occasionally going off their medication when the record affords compelling reason to view such departures from prescribed treatment as part of claimants' underlying mental afflictions." 759 F.3d at 995, 1018 n.24 (9th Cir. 2014); Pl. Br., ECF No. 10 at 8-9. In *Garrison*, the Ninth Circuit found "the record shows that Garrison's occasional decisions to go 'off her meds' were at least in part a result of her underlying bipolar disorder and her other psychiatric issues." *Garrison*, 759 F.3d at 1018 n.24. Here, Plaintiff has put forward no evidence that she stopped taking her medications due to her psychological impairments. *See* Pl. Br. at 8-9; Pl. Reply at 5-6. Accordingly, Plaintiff's reliance on *Garrison* is unavailing.

### C. Improvement with Treatment

An ALJ may reject a claimant's symptom testimony if that testimony is contradicted by evidence in the medical record. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). If the record shows a claimant's symptoms have improved with treatment, that improvement is "an important indicator of the intensity and persistence of ... symptoms." 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). The Ninth Circuit has held that "evidence of medical treatment successfully relieving symptoms can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017). Additionally, an ALJ may consider a claimant's unexplained or inadequately explained failure to follow a prescribed course of treatment. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

The ALJ also reasonably concluded that Plaintiff's mental health symptoms improved with treatment, which undermined her hearing testimony. Although Plaintiff complained that symptoms associated with her anxiety and depression impacted her ability to work, Tr. 65-66, the ALJ noted that Plaintiff addressed these symptoms effectively with a conservative course of medications and counseling. Tr. 54. Specifically, Plaintiff repeatedly said she was "happy" with her treatment. Tr. 53, 394, 399, 400, 403, 673 (noting she was "happy" with her progress, "happy" with her health, "happy" to be getting the help that she needs, "happy" to be working towards her goals, and "happy" with her therapist and medication). A therapist also noted Plaintiff "has depression and anxiety disorders which she is medicated for and they seem to be mild." Tr. 445. Further, as the ALJ pointed out, in October 2018, Plaintiff was managing her symptoms well with outpatient therapy. Tr. 53 (citing Tr. 508 (noting her scores on depression and anxiety screenings were in the low-to- moderate ranges)). This is another clear and convincing reason, supported by substantial evidence to discount Plaintiff's symptom testimony.

*D. Daily Activities*

The ALJ also discounted Plaintiff's subjective symptom testimony because it was inconsistent with her daily activities. Tr. 23. Activities of daily living can form the basis for an ALJ to discount a claimant's testimony in two ways: (1) as evidence a claimant can work if the activities "meet the threshold for transferable work skills," or (2) where the activities "contradict [a claimant's] testimony." *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007). The relevant regulations require an ALJ to consider a claimant's daily activities when evaluating subjective symptom statements. 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). The Ninth Circuit has even found such routine activities as playing video games, using public transportation, and preparing meals to undercut a claimant's testimony of disabling limitations. *Ahearn v. Saul*, 988

F.3d 1111, 1117 (9th Cir. 2021). The ALJ found Plaintiff's ability to work at a volunteer job and do a variety of household tasks undermined her testimony about difficulty concentrating and functioning at work. Tr. 52, 55.

The ALJ reasonably concluded that several of Plaintiff's daily activities conflicted with her testimony about symptoms related to depression and anxiety. To discount a Plaintiff's testimony, and ALJ must cite daily activities that "meet the threshold for transferable work skills" or "contradict [a claimant's] testimony." *Orn*, 495 F.3d at 639. The ALJ contrasted Plaintiff's ability to volunteer at a dog shelter while working twenty hours a week as a receptionist (Tr. 55, 444, 650), prepare meals, do laundry, and use public transportation (Tr. 55, 565, 675), with her testimony about difficulty concentrating and remembering. Tr. 55. The ALJ also noted that, although Plaintiff alleged she was scared being around people and "can't go in a grocery store without panicking" (Tr. 72, 75), she socialized with others (Tr. 565), went to the gym (Tr. 410) and regularly used the bus to travel. Tr. 71, 565, 675. These activities all reasonably undermine Plaintiff's testimony about difficulty concentrating, interacting with others, and being in public. This was another clear and convincing reason for the ALJ to rely upon to discount Plaintiff's testimony about visual impairments.

## II.    Lay Witness Testimony

In determining whether a claimant is disabled, an ALJ must consider "lay witness testimony concerning a claimant's ability to work." *Stout*, 454 F.3d at 1053. Lay witness testimony regarding a claimant's symptoms or how an impairment affects her ability to work is competent evidence that cannot be rejected without comment, and requires germane reasons, explained individually or in the aggregate. *Id*. An ALJ's failure to provide germane reasons for

rejecting lay witness evidence is harmless where an ALJ properly rejects a claimant's testimony and the lay witness evidence describes the same limitations. *Molina*, 674 F.3d at 1122.

The ALJ failed to analyze the lay witness testimony, but any error in failing to do so was harmless. Plaintiff's friend alleged similar limitations regarding Plaintiff's ability to concentrate, remember, and follow instructions. *Compare* Tr. 71-76 (Plaintiff's testimony about trouble concentrating, remembering, and other mental health symptoms) *with* Tr. 233-39 (lay witness testimony describing Plaintiff's difficulty with concentrating, stress or changes in routine, and struggles with instructions and household chores). As discussed above, the ALJ provided legally sufficient reasons for concluding that Plaintiff's testimony was unpersuasive. These reasons apply with equal force to the lay witness testimony. Any error in rejecting the lay witness testimony was therefore harmless. *Molina,* 674 F.3d at 1117, 1122.

## III.    Medical Opinion Evidence

For disability claims filed on or after March 27, 2017, the ALJ no longer "weighs" medical opinions but instead determines which are most "persuasive." 20 C.F.R. §§ 404.1520c(a). The 2017 regulations eliminated the hierarchy of medical opinions and state that the agency does not defer to any particular medical opinions, even those from treating sources. *Id.*; *see also Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) ("The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant."). Under the 2017 regulations, the ALJ primarily considers the "supportability" and "consistency" of the opinions in determining whether an opinion is persuasive. 20 C.F.R. § 404.1520c(c). Supportability is determined by whether the medical source presents explanations and objective medical evidence to support their opinions. *Id.* § 404.1520c(c)(1). Consistency is

determined by how consistent the opinion is with evidence from other medical and nonmedical sources. *Id.* § 404.1520c(c)(2).

An ALJ may also consider a medical source's relationship with the claimant by looking at factors such as the length, purpose, or extent of the treatment relationship, the frequency of the claimant's examinations, and whether there is an examining relationship. *Id.* § 404.1520c(c)(3). An ALJ is not, however, required to explain how she considered those secondary medical factors unless she finds that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. *Id.* § 404.1520c(b)(2-3).

The regulations require ALJs to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Id.* § 404.1520c(b). The court must, moreover, continue to consider whether the ALJ's analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(g); *Woods*, 32 F.4th at 792 ("Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence.").

*A. Dr. Pamela Roman, Ph.D.*

On December 19, 2018, Dr. Pamela Roman, Ph.D., assessed Plaintiff at the request of Oregon Department of Human Services. Tr. 563. She administered the Wechsler Memory Scale (WMS-R), the Wechsler Adult Intelligence Scale (WAIS-IV), the Woodcock-Johnson III, the Beck Anxiety Inventory, and Beck Depression Inventory tests. Tr. 563. Dr. Roman diagnosed PTSD, Major Depressive Disorder (severe with anxious distress), stimulant use disorder (in sustained full remission), child sexual abuse, partner violence, and borderline intellectual functioning (ruleout). Tr. 568. Dr. Roman wrote, "[g]iven her presentation today she would not

be expected to maintain attention and concentration throughout a normal workweek and workday." Tr. 569.

The ALJ gave little weight to Dr. Roman's opinion that Plaintiff would not being able to sustain attention and concentration throughout a normal workday or workweek. Tr. 56. The ALJ found this opinion inconsistent and unsupported by the evidence of record, "including the objective findings of the in-person evaluation and the longitudinal medical records." Tr. 56. Specifically, the ALJ found that there was no evidence that Plaintiff was unable to maintain attention or concentration throughout the evaluation. Tr. 56. Further, the ALJ found that Plaintiff's medical records show "generally normal objective findings with no evidence of persistent attention and concentration deficits." Tr. 56.

The ALJ sufficiently considered both the supportability and consistency of Dr. Roman's opinion. The supportability factor looks to the relevant objective medical evidence—that is, clinical signs and diagnostic findings, see 20 C.F.R. §§ 404.1502(c), (f), (g)—and the supporting explanations a medical source provides for their opinions. 20 C.F.R. § 404.1520c(c)(1); *Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020). The consistency factor requires an ALJ to evaluate an opinion's persuasiveness in relation to its consistency with evidence from other sources. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2); *Woods*, 32 F.4th at 792. In terms of supportability, the ALJ noted that there is no evidence that the claimant was unable to maintain attention or concentration throughout [Dr. Roman's] evaluation." Tr. 56. In fact, while Plaintiff demonstrated some abnormalities in attention and concentration (e.g., took two extra seconds to count backward from twenty), as the ALJ pointed out, "this is not indicative of an inability to sustain attention and concentration for simple work." Tr. 56, 569. Dr. Roman also observed Plaintiff function normally in several areas, including being able to complete paperwork independently,

have full orientation, logical and coherent thought processes, and no difficulty adding three to numbers correctly within the allotted time. Tr. 566-67. Moreover, in terms of consistency, the ALJ identified that other clinicians generally found Plaintiff was focused and had linear thought processes. *See* Tr. 53-54, 494, 553, 697, 763, 772, 784. Another treating psychiatric nurse found Plaintiff's presentation was "more consistent with average intellectual ability." Tr. 54, 773. Plaintiff argues that Dr. Roman's findings were adequately supported, and does not address the ALJ's consistency finding. Pl. Reply, ECF No. 13 at 7-8. But these arguments are an effort to have the Court assign its own weight to the evidence, and adopt a competing inference from it, which is beyond the scope of review. *Ahearn*, 988 F.3d at 1115 ("We may not reweigh the evidence or substitute our judgment for that of the ALJ."). Because the ALJ reasonably considered the supportability and consistency of Dr. Roman's opinion about Plaintiff's mental health limitations, and the ALJ's conclusion was supported by substantial evidence, the Court will not disturb the ALJ's finding.

## CONCLUSION

For the reasons given above, I AFFIRM the Commissioner's decision and DISMISS this case.

IT IS SO ORDERED.

DATED: ___1/31/2024___.


*Michael W. Mosman*
MICHAEL W. MOSMAN
United States District Judge